## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

**MP ACQUISITION, LLC,**

    **Plaintiff,**

    **v.**                       Civil Action No. _____

**LANDMARK TECHNOLOGY A, LLC,**

    **Defendant.**                  **JURY TRIAL DEMANDED**

---

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff MP Acquisition, LLC, d/b/a Mopec ("Mopec"), by and through its attorney of record, files this Complaint for Declaratory Judgment of (a) Non-Infringement of U.S. Patent No. 7,010,508 ("the '508 Patent"), and (b) Invalidity of the '508 Patent, against Defendant Landmark Technology A, LLC ("Landmark Technology") and hereby acknowledges, on knowledge of its own actions and information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.      This is an action for declaratory judgment that Mopec does not infringe any valid claim of the '508 Patent and that the '508 Patent is invalid. Accordingly, Mopec brings this action seeking a declaration that it has not infringed and does not infringe any valid and enforceable claim of the '508 Patent.

2.      A true and correct copy of the '508 Patent is attached as **Exhibit A**.

## PARTIES

3.      Mopec is a Delaware limited liability company with its principal place of business at 800 Tech Row, Madison Heights, Michigan 48071.

4.      On information and belief, Defendant Landmark Technology is a North Carolina limited liability company having its principal office at 2530 Meridian Pkwy Suite 300, Durham, NC 27713 and registered office at 120 Penmarc Drive Suite 118, Raleigh, NC 27603.

## JURISDICTION AND VENUE

5.      The Court has original and exclusive subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this Complaint states claims arising under an Act of Congress relating to patents, 35 U.S.C. § 271.

6.      This Complaint also arises under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 *et seq*. based on the declaratory judgment sought by Mopec due to Landmark Technology's accusations against Mopec for patent infringement and its pattern of actual litigation concerning the '508 Patent, thereby giving rise to an actual case or controversy.

7.      By sending a demand letter, Landmark Technology has directly targeted Mopec, a Michigan resident, and intentionally conducted its business in the State of Michigan.

8.      This Court has personal jurisdiction over Landmark Technology.  Upon information and belief, Landmark Technology transacts substantial business in this Judicial District, including regularly transacting or soliciting business, engaging in other persistent courses of conduct, and deriving substantial revenue from individuals and entities in Michigan.  Upon information and belief, Landmark has purposefully and repeatedly directed its activities at residents of Michigan, including sending letters to other companies based in Michigan, asserting infringement of the '508 Patent and demanding payment of money.  Thus, Landmark Technology has sufficient

minimum contacts with the State of Michigan to satisfy the Michigan long-arm statute, Mich. Comp. Laws § 600.705, and Constitutional due process requirements because Landmark Technology regularly transacts business activities in Michigan.

9.      Further, this Court has personal jurisdiction over Landmark Technology arising from Landmark Technology's own purposeful and tortious conduct directed at Michigan and its residents and occurring in the State of Michigan.

10.     Landmark Technology has a well-documented history of sending demand letters accusing companies of infringing Landmark Technology's rights regarding the '508 Patent and related patents, offering to provide the alleged infringers a non-exclusive license to use the patent at issue for a fee and suing these companies if they do not pay Landmark Technology for a license to use the subject patent.  Mopec received such a demand letter from Landmark Technology in 2021 accusing Mopec of infringement and demanding a payment of $65,000 for a license. Landmark Technology's demand letter to Mopec, both individually and taken together with Landmark Technology's history of filing patent infringement lawsuits regarding the '508 Patent and other patents, exemplifies the actual case or controversy under 28 U.S.C. §§ 2201 and 2202 arising from Landmark Technology's demand letter to Mopec.

11.     Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b), as a substantial part of the events giving rise to the claims in this Complaint occurred in this Judicial District and Mopec's principal place of business is in this Judicial District.

12.     Under *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017) and its progeny, and 28 U.S.C. § 1400, any suit for infringement upon the '508 Patent must be

brought in the judicial district where Mopec resides or has a regular or established place of business.

13.     Mopec both resides and has its regular, established place of business in the Eastern District of Michigan; thus, venue is appropriate in this Court.

## FACTUAL BACKGROUND

### General Background

14.     On information and belief, Landmark Technology is an entity commonly referred to as a patent troll whose business activities solely consist of sending demand letters seeking patent license fees and receiving license fees in return, or filing lawsuits against purported patent infringers who fail to pay the license fee demanded.  On information and belief, Landmark Technology claims to have "exclusive rights" to the '508 Patent with the right to enforce the '508 Patent.

15.     On information and belief, Landmark Technology does not practice the claims of the '508 Patent, and Landmark Technology does not make, use, or sell any product or services of its own.

16.     On information and belief, Landmark Technology's sole business model and activity involves sending letters accusing others of patent infringement and threatening litigation.

17.     On information and belief, Landmark Technology is, or has been, involved in at least eighteen (18) other lawsuits against various companies involving claims about the '508 Patent.

18.     Landmark Technology and its predecessor companies, as patent trolls, have sued hundreds of companies for nuisance value amounts based on likely-invalid and non-infringed patents, wasting valuable court resources to force companies to pay them for baseless intellectual property because it is less expensive to settle for nuisance amounts than litigate.  Exploiting the

<u>U.S. federal court system to gain leverage over those it accuses of infringement—without having any intention of actually enforcing its patent based on the merits—is the hallmark of Landmark Technology's business model</u>.

19.     Landmark Technology also appears to systematically and quickly settle litigations prior to any potentially damaging rulings on the baselessness of Landmark Technology's claims, thereby preserving its ability to extract licensing fees from other companies moving forward.

**Mopec's Business and Contributions Helping with COVID Pandemic**

20.     Mopec is on the front- and back-lines dealing with the fallout of the COVID pandemic.

21.     First, Mopec is a supplier of Personal Protective Equipment (PPE) and supplies for healthcare providers.  Mopec supplies healthcare providers with the PPE essential to battle COVID, including face shields, face masks, isolation gowns, hand sanitizer, and infrared thermometers, among other items.

22.     Second, Mopec is a supplier of autopsy, anatomy, and pathology equipment and supplies. Mopec's equipment offerings, including its mobile morgue trailers and storage containers, as well as body bags, have become essential equipment for many healthcare providers as a result of COVID's devastation.

23.     Due to COVID, Mopec is stretched thin assisting with the pandemic and is a key part of the fight against COVID, and the Letter from Landmark attempting to squeeze money based on an invalid patent (as described in detail below) against a company that does not infringe (as described in detail below) warrants expedited dismissal, attorneys' fees, and further equitable relief.

**Landmark Technology's Demand Letter to Mopec**

24.     On or about January 8, 2021, Mopec received an initial demand letter (the "Letter")

addressed to Mr. Jay Troger of Mopec.  In the Letter, Landmark Technology stated that it has

"exclusive rights" to patents including "its '508 [P]atent," and Landmark Technology asserted

that Mopec infringes the '508 Patent, claiming that "MP Acquisition, LLC . . . automated

multimedia data processing network systems . . . practices U.S. Patent No. 7,010,508 C1 . . .

[T]he specific functionalities implemented by Mopec using their servers and devices interfaced

to Mopec's web servers constitutes use of the technology taught within the meaning of Claim 1

of the '508 patent."  A true and correct copy of the Letter as received is attached as **Exhibit B**.

25.     The Letter does not include an element by element analysis, or any other type of straight-

faced, reasonable, or proper description of Mopec's services purported to infringe, and instead

simply includes a link to two pages on Mopec's website[1], along with generic accusations, which

upon information and belief, are common to most or all of the demand letters Landmark

Technology sends to alleged infringers of the '508 Patent.  Landmark Technology further

demanded payment through deceptive and misleading information regarding the importance of

the '508 Patent as a "pioneer patent[]" covering "widely regarded" technology.

26.     A three-panel board of expert judges at the U.S. Patent & Trademark Office ("USPTO")

has already stated that there is no evidence that the '508 patent is in any way a "pioneer patent."

(*See* **Exhibit C**.)https://www.mooreandgiles.com/shop/checkout.

27.     The Letter concludes by offering Mopec a "non-exclusive license to its '508 patent, for

$65,000."  The Letter requested a response within 15 days.

28.     Landmark Technology stated in its letter that the $65,000 dollar number is a "substantial

discount to the historic licensing price of Landmark's portfolio, and will not be available in the

---

[1] *See, e.g.*, https://www.mopec.com/supplies/ and https://www.mopec.com/my-account/

event of litigation," but it appears Landmark Technology offers everyone the same number. Accordingly, upon information and belief, this statement is false.

29.     Nowhere in the Letter did Landmark Technology indicate that its offer was negotiable. Upon information and belief, this tactic is designed to extract payment from letter recipients, knowing that the payment would be significantly less expensive than defending against even an invalid patent in federal court.

30.     Mopec had no knowledge of Landmark Technology or the '508 Patent until receipt of the Letter.

**The '508 Patent**

31.     The '508 Patent, entitled "Automated Multimedia Data Processing Network," issued on or about March 7, 2006.  The named inventor of the '508 Patent is Lawrence B. Lockwood ("Lockwood").

32.     The '508 Patent is directed to "terminals used by banking and other financial institutions to make their services available at all hours of the day from various remote locations." (Exhibit A, col. 1, ll. 22-25 (emphases added).)  Mopec is not a banking or other financial institution; Mopec sells autopsy, anatomy, and pathology equipment and supplies.

33.     The patent states: "The principal object of this invention is to provide an economical means for *screening loan applications*."  (*See* Exhibit A, col. 1, ll. 46-47 (emphases added).)  Yet that description and the financial institution aspects of the patent, which limit the claims as explained below, have nothing to do at all with Mopec's business of autopsy, anatomy, and pathology equipment and supplies.  Other objects of the invention include: "a system that ties together financial institution data processing, the computer services of a credit reporting bureau, and a plurality of remote terminals.  Each remote terminal displays the live image of a fictitious

loan officer who helps the applicant through an interactive series of questions and answers designed to solicit from the applicant all the information necessary to process his loan application."  (*See* Exhibit A, col. 1, l. 64 - col. 2, l. 4.)

34.    The Patent Trial and Appeal Board ("PTAB") at the USPTO determined that the claims of the '508 Patent are directed to "a financial product or service" under the America Invents Act ("AIA") and that the claims are more likely than not invalid.  (Exhibit C, at 12.)

35.    Because of the PTAB decision, the '508 Patent may no longer enjoy a presumption of validity.

36.    As such, no reasonable litigant, judge, or jury could believe that the claims of the '508 patent read on a website that sells autopsy, anatomy, and pathology equipment and supplies, or that the patent is valid.

37.    Figure 1 is representative of the claims of the '508 Patent:



38.    The terminals **105** (seemingly described as "stations" in the claims) of the claimed method are analogous to ATMs or other smart self-service/automated machines where a user

visits the remote terminal and interacts with that terminal.  Part of the invention was to move beyond typical vending machines and into the realm of "more complex types of goods and services distribution which requires a great deal of interaction between individuals or between individuals and institutions."  (Exhibit A, col. 1, ll. 40-43.)

39.     According to the '508 Patent, remote terminals present a live image of a "fictitious" automated loan officer who would guide the users through questions and then "make a decision based on all the information gathered..." including offering a loan amount.  (*See* Exhibit A, col. 1, l. 64 - col. 2, l. 11.)

40.     According to the patent and prosecution history, the '508 Patent presents a solution to a problem of tying together financial institution data processing, the computer services of a credit reporting bureau, and a plurality of remote terminals.  Each remote terminal displays a live image and interactive series of questions.  (*Id.*)

41.     According to the patent, prosecution history, and claims of the '508 Patent, the claims of the '508 Patent require an interactive video presentation on the video display of the station or terminal.  (Exhibit A, col. 7, ll. 4-12.)

42.     According to the '508 Patent, because each user using the terminal (or station) of the '508 Patent will provide different answers to earlier questions, the user may be provided with subsequent questions different from those posed to another user.  (*See* Exhibit A., col. 4, ll. 61-64.)

43.     According to the patent and prosecution history, each user of the claimed method of the '508 Patent will be provided with an individualized presentation via the video-based interface. (*See* Exhibit A, col. 3, ll. 54-58.)[2]

44.     The claims of the '508 patent require that its method make suggestions, or independently provide something different than what was requested but more responsive to the user's needs, and output said suggestions via the video display.  Note, for example, the following language from claim 1 (emphases added):

> means for <u>interactively directing the operation of said computer</u>, <u>video display</u>, data receiving and transmitting means, and mass memory comprising means for holding an operational sequencing list, means for processing said operator-entered information, inquiries, and <u>orders according to backward-chaining and forward-chaining sequences,</u> and means responsive to the status of said computer, display, mass memory, and data receiving and transmitting means for controlling their operation;
>
> said means for <u>processing including means for analyzing said operator-entered information and means, responsive to said means for analyzing, for presenting additional inquiries in response to said operator-entered information</u>…

45.     The claims of the '508 Patent require forward-chaining and backward-chaining, which happens at the situs of the station or terminal, which in essence, appears to mean that the claimed terminal or station of the '508 Patent interacts with a user who visits the remote location of the terminal in order to obtain a financial product or service; the terminal presents the user with a live image of a "fictitious" financial institution employee (*e.g.*, a fictitious loan officer) who first tells the user how to use the terminal; the user and the fictitious employee then engage in an iterative back and forth to answer what the computer determines are relevant questions, including

---

[2] All of Exhibit A is hereby incorporated by reference, including but not limited to the patent's figures, specification, and claims.  All other exhibits referenced in this Complaint are also hereby incorporated by reference.

based on feedback from the user; the fictitious employee is able to make suggestions for

financial products or services, including providing a loan amount offer.

46.     The entirety of claim 1 of the '508 Patent reads:

An automated multimedia system for data processing which comprises:

 a computerized installation including a database, means for entering data into said database, and a program means for storing, processing, updating, and retrieving data items in response to coded requests from stations in communication with said installation;

 at least one station including a general purpose computer and a program applicable to said computer for sending said requests to said installation;

 means for communicating data back and forth between said installation and said station;

 said station further including:

  a mass memory and means associated therewith for storing and retrieving textual and graphical data;

  a video display and means associated therewith for displaying textual and graphical data;

  means for entering information into said computer;

  means for programming sequences of inquiring messages on said video display in accordance with preset routines and in response to said information;

  said sequences including instructions to an operator of said station for operating said station; and

  means for selectively and interactively presenting to said operator interrelated textual and graphical data describing a plurality of transaction options, and for selectively retrieving data from said mass memory;

 means for storing information, inquiries, and orders for transactions entered by said operator via said means for entering information;

 means for transmitting said inquiries and orders to said installation via said means for communicating;

 means for receiving data comprising operator-selected information and orders from said installation via said means for communicating; and

means for interactively directing the operation of said computer, video display, data receiving and transmitting means, and mass memory comprising means for holding an operational sequencing list, means for processing said operator-entered information, inquiries, and orders according to backward-chaining and forward-chaining sequences, and means responsive to the status of said computer, display, mass memory, and data receiving and transmitting means for controlling their operation;

said means for processing including means for analyzing said operator-entered information and means, responsive to said means for analyzing, for presenting additional inquiries in response to said operator-entered information;

said computerized installation further including:

means responsive to items received from said station for immediately transmitting selected data retrieved from said database to said station;

means responsive to an order received from said station for updating data in said database including means for correlating to a particular set of data received from said station;

whereby said system can be used by a plurality of entities, each using one of said stations, to exchange data, and to respond to inquiries and orders instantaneously or over a period of time.

47.    In order to infringe on, for example, claim 1 of the '508 Patent, if it were valid, which Mopec does not concede, Mopec must practice every single limitation/element of claim 1 as set forth above.

**The '508 Patent's Prosecution History Further Narrows the Patent's Scope**

48.    The patent prosecution of the '508 Patent from filing to issuance was a 10 year odyssey at the USPTO, where numerous concessions had to be made by Landmark Technology in order to get the patent allowed.  During prosecution, Lockwood made clear that he believes his invention dates back to <u>May 24, 1984</u> (the so-called priority date).

49.    The Examiner initially rejected the patent application that ultimately issued as the '508 Patent (the "'772 Application") under 35 U.S.C. § 112 as being indefinite, non-enabling, and

12

lacking specification support; and under 35 U.S.C. § 103 as being an obvious variation of prior technology in an earlier Lockwood patent.

50.     In response, Lockwood stated that support for the means-plus-function claims in the '508 Patent could be found in the specification, using as support information from the specification that limits the claims to "financial institution[s]," "process[ing] loan applications," "periodically polling the various terminals…in order to verify their status and proper operation," and "fictitious officer."

51.     As explained in 35 USC § 112(f), "An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."  (Emphasis added.)  Therefore, the limitations from the specification are read into the claims for these means-plus-function aspects of the '508 Patent.

52.     The broadest reasonable interpretation of a means plus function claim will, therefore, be drawn to the structure, material or acts described in the specification and their equivalents.  (*See* M.P.E.P. 2181.)

53.     Mopec is not a "financial institution," does not "process loan applications," does not "periodically poll[] the various terminals…in order to verify their status and proper operation," and does not have a "fictitious officer."  Upon information and belief, "stations" according to the Letter from Landmark Technology are a customer's computer or phone where they submit their orders for autopsy, anatomy, and pathology equipment and supplies, for example.  Mopec does not periodically "poll[]" their customers computers or phones to verify their status and proper operation.

54.    Further, in response to the obviousness rejection, Lockwood argued claim 1 "employs a type of problem solving technique known in the art as 'backward-chaining.'  Backward-chaining is a way to emulate human inductive reasoning or goal-directed reasoning."  (Emphasis added.)

55.    Mopec's very typical e-commerce platform does not practice "backward-chaining" as claimed in the '508 Patent, to the extent Mopec can try to discern the meaning of that vague and insufficiently described element of the claims.

56.    Lockwood also argued claim 1 "employs a type of problem solving technique known in the art as 'forward-chaining.'  Forward-chaining is a common term of art designating a way to emulate human deductive reasoning or data-driven reasoning."  (Emphasis added.)

57.    Mopec's very typical e-commerce platform does not practice "forward-chaining" as claimed in the '508 Patent, to the extent Mopec can try to discern the meaning of that vague and insufficiently described element of the claims.

58.    On March 7, 2006, the '508 Patent issued.

59.    Upon information and belief, the patent was challenged at the USPTO according to the program for requesting review by the USPTO's PTAB for patents that are business method patents.

60.    As part of this USPTO PTAB review, the PTAB determined that the claims of the '508 Patent are directed to "a financial product or service," that "the subject matter of claim 1, as a whole, does not recite 'a technological feature that is novel and unobvious over the prior art," and that it was "more likely than not" that the '508 Patent's claims were invalid.  (*See* Exhibit C.)

61.    Specifically, the Board held that the claims are more likely than not invalid under 35 U.S.C. § 112.  (*Id.*)

62.     As a part of this USPTO PTAB review, the PTAB stated that there is no evidence that the '508 Patent is in any way a "pioneer patent."  (Exhibit C at 14-15).

63.     Upon information and belief, there was no final decision because the parties, including inventor Lockwood, settled prior to a final decision.

64.     Mopec agrees with the USPTO PTAB and Mopec cannot infringe what is hopelessly flawed claim language, including what constitutes backward-chaining and forward-chaining.

65.     Claim 1 of the '508 Patent contains a large number of means plus function limitations. Under 35 U.S.C. § 112(f), the claims are limited to the function described in the specification. The brief specification does not provide the required structure of the various "means," as noted by the Patent Trial and Appeal Board.  This is made worse by the narrow and specific scope that Landmark Technology repeatedly described to have during prosecution.  The required level of detail is not found anywhere in the specification.

**Mopec Does Not Infringe the '508 Patent**

66.     Mopec does not infringe claim 1, or any other claim of the '508 Patent, because Mopec does not practice every limitation of, by way of example, claim 1.

67.     Upon information and belief, Landmark Technology failed to undergo a reasonable infringement analysis prior to sending its Letter.

68.     The '508 Patent has nothing to do with a standard e-commerce website, such as that of Mopec.

69.     The accused website, through which Mopec sells autopsy, anatomy, and pathology equipment and supplies through standard shopping e-commerce functionality, has nothing to do with an alleged complex terminal allowing an operator to interact with a financial institution through a video-based interface on said terminal where the video personality (the "fictitious loan

officer") provides to the user directions, information, and products or services different than those sought by the user.

70.     No reasonable litigant could conclude that Mopec's e-commerce website infringes the claims of the '508 Patent.

71.     No reasonable litigant could conclude that the '508 Patent is valid and enforceable.

72.     In regards to the website accused in Landmark Technology's demand letter, https://www.mopec.com/supplies/ and https://www.mopec.com/my-account/, Mopec markets online through its website.  In order for a customer to access https://www.mopec.com/supplies/ or https://www.mopec.com/my-account/, the customer must first choose to install third party internet browser software (such as: Chrome, Internet Explorer, Firefox, or Safari) onto the customer's computer or device.  A customer can then "visit" the accused website by typing a URL into a text box of the browser.  This customer action causes the customer's internet browser to send a request to a third-party's web server which hosts the accused website via a standard internet connection.  In response to the request from the customer's browser, a third-party web server causes the accused website to be displayed onto the customer's device.

73.     Mopec's website is hosted on Kinsta, a managed WordPress hosting provider.  Managed hosting is defined as all back-end server maintenance, tasks, and responsibilities being handled by the hosting provider.  Mopec's website is built on an open source platform, Wordpress, and its e-commerce functionality is driven through the WooCommerce plugin. WooCommerce is also an open source platform, with over five million active installs, powering 26% of the top 1 million online stores.

74.     In addition to WooCommnerce, Mopec utilizes over 50 common themes and plugins to facilitate e-commerce interactions.  These plugins include: Autoship by QPilot, Gravity Forms,

HubSpot, the YITH Suite of WooCommerce Plugins, UPS Shipping, Stripe Payment Gateway, and Yoast SEO for WooCommerce, among others.

75.     If a customer decides to add a product to the shopping "cart" on the accused website, the website continues to use the third party's software that is licensed by Mopec.  The customer also interacts with the menus displayed on the customer's device in order to select and order autopsy, anatomy, and pathology equipment and supplies.

76.     The accused website is hosted at a third party's web server farm which, in turn, does not communicate directly with any of Mopec's in-house "back end" computers.  Mopec does not own, operate, or host its own web servers nor a web server farm.  Furthermore, Mopec obviously does not own, operate, and/or control any of its customers' computers or mobile devices used to access its website.  Also, much of the linking and data sending/receiving as claimed by the '508 Patent would be practiced by the Internet as a whole, clearly something Mopec does not own or have any control over.

77.     Landmark Technology alleges that Mopec's servers constitute an infringing use of claim 1 of the '508 Patent when customers use devices (*i.e.*, "stations") to interact with Mopec web servers.  Mopec does not infringe any valid and enforceable claim of the '508 Patent for reasons including, but not limited to, the fact that the stations (*i.e.*, customer devices) accessing the accused website are not owned or used by Mopec.  Additionally, even if such terminals/stations were owned or used by Mopec, such terminals/stations do not utilize any backward- or forward-chaining technology, which is required by claim 1 of the '508 Patent based on concessions made during prosecution and by the inventor himself; and no server, computer or device associated with Mopec uses forward chaining technology at all, which is also required by claim 1 of the '508 Patent.

78.     Mopec's system does not utilize all elements of the prolix '508 Patent claim 1, or any other claim.  Also, to the extent any of the elements are practiced, several elements are not practiced by Mopec, but rather by third parties.

### COUNT I – DECLARATION OF INVALIDITY OF U.S. PATENT 7,010,508

79.     Mopec incorporates by reference the allegations in paragraphs 1 through 78 of this Complaint as if fully set forth herein.

80.     Landmark Technology claims to have exclusive rights to the '508 Patent.

81.     Landmark Technology demanded that Mopec pay for a license to the '508 Patent within 15 days.

82.     Landmark Technology is in the business of threatening litigation and following through on that threat specifically with respect to the '508 Patent.  A review of Landmark Technology's record demonstrates a consistent and frequent pattern of litigation, creating a reasonable fear that Mopec was Landmark Technology's next target.

83.     The claims of the '508 Patent are invalid under at least any one of 35 U.S.C. §§ 101, 102, 103, and 112.

84.     The claims of the '508 Patent do not constitute patent eligible subject matter pursuant to 35 U.S.C. § 101, and therefore are an invalid or ineligible patent on an abstract idea.  The '508 Patent claims the abstract idea of automated data processing of business transactions.  Nothing in the claims, "transforms the nature of the claims" into patent eligible subject matter.  *Mayo Collaborative Services v. Prometheus Labs, Inc.*, 566 U.S. 66 (2012).  Furthermore, "[t]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention."  *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).

85.     For claims solely implemented on a computer, the Court of Appeals for the Federal

Circuit has determined that the relevant inquiry is whether the claims are "'directed to an

improvement in the functioning of a computer' [or whether they] 'simply add [] conventional

computer components to well-known business practices.'"  *See In re TLI Commc'ns LLC Patent*

*Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016).  As the Supreme Court and Federal Circuit repeatedly

have held, merely implementing an abstract idea using well-known computer components or

functions, limiting the idea to a particular technological environment, or adding other token steps

is insufficient.  *Id.* at 2357-60; *see, e.g., Bilski v. Kappos*, 561 U.S. 593 (2010); *Ultramercial,*

*Inc. v. Hulu*, LLC, 772 F.3d 709, 717-18 (Fed. Cir. 2014).  *See also, Content Extraction &*

*Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343 (Fed. Cir. 2014) (finding

claims relating to "concept[s] of data collection, recognition, and storage" to be abstract because

"humans have always performed these functions") (mental processes are not patentable).  The

'508 Patent covers "a financial product or service," as determined by a panel of judges at the

USPTO's PTAB, for screening loan applications, something that does not improve the

functioning of a computer and something humans have been doing for years.  Accordingly, the

'508 Patent is invalid under 35 U.S.C. 101 for claiming patent ineligible subject matter.

86.     In 2019, the USPTO provided guidelines on what constitutes patent ineligible subject

matter (*see* **Exhibit D**), and those guidelines dictated that the following are patent ineligible:

"fundamental economic principles or practices," "commercial or legal interactions

(including…marketing or sales activities or behaviors; business relations)," and "managing

personal behavior or relationships or interactions between people (including…following rules or

instructions)."  The Abstract of the '508 Patent proves definitively that it violates all three of the

above, because it covers the economic principles and practice of processing loan applications

based on credit ratings, it covers a commercial/legal interaction between a loan applicant and a loan officer, and it covers managing personal interactions between people; namely, a loan officer and loan applicant as they follow rules and instructions applying for and granting loans. Consequently, the '508 Patent covers patent ineligible subject matter according to the USPTO and all the claims are invalid under 35 U.S.C. § 101.

87.     Additionally, the '508 Patent is invalid as anticipated pursuant to 35 U.S.C. § 102 or as obvious pursuant to 35 U.S.C. § 103 by numerous prior art references such as but not limited to U. S. Patent No. 4,321,672.  The PTAB stated that Claim 1 of the '508 Patent "as a whole, does not recite 'a technological feature that is novel and unobvious over the prior art.'"  (Exhibit C, at 14).

88.     The claims of the '508 Patent are also invalid because the specification fails to provide any structure or necessary support for the numerous means plus function elements recited in the claims, pursuant to 35 U.S.C. § 112.  The claims of the '508 Patent are also invalid under 35 U.S.C. § 112 for at least the reasons that the claims are indefinite and not enabled by the Patent's specification, which does not mention, teach, or discuss processing orders, and because the specification does not provide any structure for the numerous means-plus-function clauses recited in the claims other than generic computer parts.  The claims are altogether vague, insufficiently described, and non-enabled.

89.     The PTAB determined that the claims of the '508 Patent were more likely than not indefinite.  (Exhibit C, at 20, 22).

90.     Based on Landmark Technology's letter and the accusations of patent infringement contained therein, the imminent threat of litigation for patent infringement, a consistent pattern of carrying out its threat by filing patent infringement litigations over the '508 Patent, as well as

Mopec's denial of infringement, a substantial, immediate, and real case or controversy exists between Mopec and Landmark regarding whether Landmark is seeking to enforce an invalid patent against Mopec. A judicial declaration is necessary to determine the parties' respective rights regarding the '508 Patent.

91.     This controversy arises, in whole or in part, from Landmark's Letter to Mopec claiming that Mopec infringes at least Claim 1 of the '508 Patent, and demanding Mopec pay for a license to Landmark. Landmark's Letter alone, and in combination with Landmark's known pattern and practice of filing patent infringement lawsuits against licensing targets that refuse to pay the license fee, clearly demonstrates Landmark's intent to seek to wrongfully enforce the '508 Patent against Mopec.

92.     A judicial declaration that '508 Patent is invalid is necessary and appropriate so that Mopec may ascertain its rights regarding the '508 Patent and to prevent further injury to Mopec.

93.     Mopec is entitled to a declaration that the claims of the '508 Patent are invalid.

## COUNT II – NON-INFRINGEMENT OF U.S. PATENT NO. 7,010,508

94.     Mopec restates and incorporates by reference the allegations in paragraphs 1 through 93 of this Complaint as if fully set forth herein.

95.     Landmark Technology claims to have exclusive rights to the '508 Patent.

96.     Landmark Technology has demanded that Mopec pay for a license to the '508 Patent within 15 days.

97.     Landmark Technology is in the business of threatening litigation and following through on that threat specifically with respect to the '508 Patent. A review of Landmark Technology's record demonstrates a consistent and readily apparent pattern of litigation.

98.     On information and belief, Landmark failed to conduct any pre-demand due diligence prior to demanding a $65,000 license payment from Mopec.

99.     Accordingly, Landmark Technology failed to conduct a proper pre-demand due diligence prior to demanding $65,000 from Mopec.

100.    Landmark Technology has made numerous limiting admissions regarding the scope of the claims of the '508 Patent during its prosecution and in subsequent USPTO proceedings.

101.    Even a cursory pre-demand research effort would have established that under the plain language of the claim, and especially under the much narrower reading argued by the inventor and Landmark Technology during prosecution and afterwards, the accused Mopec's system and/or technology does not infringe any valid and enforceable claim of the '508 Patent.

102.    Mopec has not infringed and does not infringe any valid and enforceable claim of the '508 Patent, whether literally or under the doctrine of equivalents.

103.    Additionally, Mopec is not liable for any induced, contributory, divided, or other indirect infringement of any valid and enforceable claim of the '508 Patent.  Neither Mopec, nor its customers who access the accused websites, nor anyone associated with Mopec, utilize every element of any claim in the '508 Patent as is required for infringement.

104.    Based on Landmark Technology's Letter and the accusations of patent infringement contained therein, the imminent threat of litigation for patent infringement, a consistent pattern of carrying out its threat by filing patent infringement litigations over the '508 Patent, as well as Mopec's denial of infringement, a substantial, immediate, and real case or controversy exists between Mopec and Landmark regarding whether Landmark is seeking to enforce an invalid patent against Mopec.  A judicial declaration is necessary to determine the parties' respective rights regarding the '508 Patent.

105.    At least in part, the controversy arises from Landmark Technology's Letter to Mopec claiming that Mopec infringes at least claim 1 of the '508 Patent, and providing Mopec the option to pay for a license to the '508 Patent within fifteen (15) days.  Landmark Technology's Letter alone, and in combination with Landmark Technology's widespread campaign of filing patent infringement lawsuits against licensing targets that refuse to pay the license fee Landmark Technology demands, clearly demonstrates Landmark Technology's intent to seek to erroneously enforce the '508 Patent against Mopec.

106.    A judicial declaration that Mopec does not directly or indirectly infringe any valid and enforceable claim of the '508 Patent is necessary and appropriate so that Mopec may ascertain its rights regarding the '508 Patent and to prevent further injury to Mopec.

107.    While Mopec submits it does not infringe the '508 Patent and is entitled to a declaration stating as much, Mopec is alternatively entitled to a declaration that Landmark Technology may not recover damages prior to January 8, 2021.

108.    Mopec contends it does not infringe any claims of the '508 Patent and is entitled to a declaration so stating.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff MP Acquisition, LLC respectfully requests the following relief:

a.      A declaration that Mopec's services, systems, technology, and/or practices have not infringed and do not infringe, directly or indirectly, any valid and enforceable claim of the '508 Patent, whether literally or under the doctrine of equivalents;

b.      A declaration that the '508 Patent is invalid for failure to comply with the requirements of 35 U.S.C., including at least §§ 101, 102, 103 and/or 112;

c.      An order declaring that this is an exceptional case and awarding Mopec its costs,

expenses, disbursements and reasonable attorneys' fees under 35 U.S.C. § 285;

d.      An order awarding Mopec all damages caused by Landmark Technology's

unlawful acts, including punitive damages and pre- and post-judgment interest, as

provided by law; and

e.      That Mopec be granted such other and further legal and equitable relief against

Defendant Landmark Technology as the Court deems appropriate.

## JURY DEMAND

Under Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a

trial by jury on all issues so triable.

Dated: February 10, 2021                 Respectfully submitted,

**MP ACQUISITION, LLC**

By: /s/ Nathan A. Evans

Nathan A. Evans (VA Bar No. 46840)
WOODS ROGERS PLC
123 East Main Street, Fifth Floor
Charlottesville, VA 22902
(434) 220-6829 (Phone)
(434) 220-5687 (Fax)
nevans@woodsrogers.com

ATTORNEY FOR PLAINTIFF,
MP ACQUISITION, LLC

By: /s/ Michael T. Raggio

Michael T. Raggio, Esq. (MI Bar No. P47134)
Raggio & Dinnin, PC
6585 Rochester Road, Suite 106
Troy, MI 48085
(248) 364-2100 (Phone)
(248) 364-2200 (Fax)

raggiodinnin@aol.com

ATTORNEY FOR PLAINTIFF,
MP ACQUISITION, LLC